UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.  21-CV-81277-CANNON/REINHART

JOHN DAVID GRENON,

                Plaintiff,

v.

RIC BRADSHAW, in his official capacity as
Sheriff of Palm Beach County;
YORDAN PEREZ, in his individual capacity;
WILLIAM ROTHMAN, in his individual capacity;
JOHN DOES 1-2, in their individual capacities;

                Defendants.

_____/

## REPORT AND RECOMMENDATION ON DEFENDANTS BRADSHAW AND ROTHMAN'S MOTION TO DISMISS (ECF No. 23)

Defendants Ric Bradshaw ("PBSO") and William Rothman ("Deputy Rothman") move to dismiss Counts II and III of Plaintiff John David Grenon's ("Mr. Grenon") First Amended Complaint ("FAC") for failure to state a claim pursuant to Fed. R. Civ. P. 8, 10, and 12(b)(6). ECF No. 23. For the reasons discussed below, it is **RECOMMENDED** that the Motion to Dismiss be GRANTED and Mr. Grenon be given one final opportunity to file an amended complaint.

Judge Cannon referred the Motion to Dismiss to me for appropriate disposition. ECF No. 29. I have reviewed the FAC (ECF No. 14), Defendants' Motion to Dismiss (ECF No. 23), Mr. Grenon's Response (ECF No. 25), and Defendants' Reply (ECF No. 26). This matter is now ripe for decision.

## BACKGROUND

The factual background given below has been drawn from allegations in the FAC which, on a motion to dismiss, the court must credit as true. *See Instituto de Prevision Militar v. Merill Lynch*, 546 F.3d 1340, 1342 (11th Cir. 2008).

On May 31, 2019, PBSO received a tip from an anonymous caller that a man in the area was taking photographs of parked vehicles. ECF No. 14 ¶ 13. The anonymous caller described the man as "Hispanic with black hair, wearing black shirt and shorts . . . 6'2" tall, weighing approximately 200 lbs." *Id*. Officer Yordan Perez ("Deputy Perez") was dispatched to the area to investigate. *Id*. ¶ 14.  That same evening, Mr. Grenon drove his vehicle from the hotel where he was staying to a Walmart to pick up groceries. *Id*. ¶ 11. While there, he realized his car was leaking fuel and he could not drive it back to the hotel. *Id*. He called to have his car towed to the auto-repair shop. *Id*. Since the auto-repair shop was on the way to Mr. Grenon's hotel, the tow truck driver gave him a ride in the direction of his hotel and dropped him off along the way. *Id*. ¶ 12. As Mr. Grenon was walking back to his hotel, he stopped to text his mechanic on his cellphone. *Id*. ¶ 20. Deputy Perez, who was in that area investigating the anonymous tip about a man photographing cars, saw and stopped Mr. Grenon. *Id*. ¶ 21. Deputy Perez asked Mr. Grenon where he was going and what he was doing. *Id*. When Mr. Grenon refused to answer, Deputy Perez activated his emergency lights, approached Mr. Grenon on foot, and demanded he produce his identification. *Id*. ¶¶ 22–23. Mr. Grenon asked whether he was being detained or was free to leave *Id*. ¶ 24. Deputy Perez approached Mr. Grenon with a

"clenched" jaw while holding the holster of his gun; he told Mr. Grenon that he matched the description of the individual the anonymous caller had described *Id.* ¶¶ 25–26. When Mr. Grenon continued to remain silent and not provide his ID, Deputy Perez placed Mr. Grenon in handcuffs. *Id.* ¶ 27. Deputy Rothman and two other unnamed officers ("John Doe Defendants") arrived on the scene. *Id.* ¶ 28. Due to Deputy Perez's "hostile demeanor" and believing he was being unlawfully detained, Mr. Grenon remained silent while the officers searched him and found his phone, keys, wallet, and ID. *Id.* ¶ 29–30. Deputy Perez then took photos of Mr. Grenon on his personal cellphone and threatened to send the photos to the surrounding agencies. *Id.* ¶ 31. Deputy Rothman witnessed the photographing incident and "began laughing after hearing [the] threat." *Id.*

Deputy Perez then placed Mr. Grenon in the back of patrol car, drove him to a PBSO substation, and left him handcuffed for thirty minutes with his arms locked behind his back, hyperextending his shoulders. *Id.* ¶¶ 32, 35–36. When Mr. Grenon called out for help, Deputy Perez came back and spoke to Mr. Grenon to explain why he had been arrested and offer him another opportunity to explain why and what he was doing in the area. *Id.* ¶ 36–37. He also loosened the handcuffs on Mr. Grenon and explained that there had been a high number of burglaries in the area. *Id.* When Mr. Grenon still would not provide information about himself, Deputy Perez drove Mr. Grenon to the Palm Beach County Jail where he was booked for "Obstruction of Justice . . . and Loitering and Prowling." *Id.* ¶ 39. On December 6, 2019, the Office of the State Attorney for Palm Beach County, Florida dismissed both charges based on

a finding "that there was insufficient evidence and no probable cause for [Mr. Grenon]'s arrest." *Id.* ¶ 41. Mr. Grenon alleges that he "continues to suffer physical injury to his shoulders from the prolonged detention, as well as emotional and mental trauma from the unlawful arrest." *Id.* ¶ 42.

Mr. Grenon brings one claim against Deputy Perez for violation of 42 U.S.C. § 1983 by making a false arrest (Count I), one claim against Deputy Rothman (and John Does 1 and 2) for violation of 42 U.S.C. § 1983 by failing to intervene in said unlawful arrest (Count II), and one state law claim against PBSO for making a false arrest. *Id.* at 9–13.

Deputy Rothman move to dismiss Count II of the FAC pursuant to Fed. R. Civ. P. 8, 10, and 12(b)(6) on the grounds that (1) Deputy Rothman is entitled to qualified immunity, and (2) the FAC constitutes a shotgun pleading. ECF No. 23 at 1–2. PBSO moves to dismiss Count III of the FAC pursuant to Fed. R. Civ. P. 8, 10, and 12(b)(6) on the grounds that (1) the FAC constitutes a shotgun pleading and (2) PBSO is entitled to immunity under state law because Mr. Grenon failed to plead the tort of false arrest in the alternative. *Id.* at 2.

Mr. Grenon argues in his Response that the Motion to Dismiss should be denied because (1) Deputy Rothman is not entitled to qualified immunity, (2) the FAC is not a shotgun pleading in that it does not "create an inscrutable tangle of facts," and (3) paragraph 62 of the FAC properly pleads Count III against PBSO in that it alleges that PBSO committed the tort of false arrest in the alternative. ECF No. 25 at 2–7.

## STANDARD ON MOTION TO DISMISS

A pleading in a civil action must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To satisfy the Rule 8 pleading requirements, a claim must provide the defendant fair notice of plaintiff's claim and the grounds upon which it rests. *See Swierkiewicz v. Sorema N.A.*, 534 U. S. 506, 512 (2002). While a claim "does not need detailed factual allegations," it must provide "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see Ashcroft v. Iqbal*, 556 U. S. 662, 678 (2009) (explaining that the Rule 8(a)(2) pleading standard "demands more than an unadorned, the defendant-unlawfully-harmed-me accusation"). Nor can a claim rest on "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U. S. at 678 (quoting *Twombly*, 550 U. S. at 557 (alteration in original)).

On a motion to dismiss under Rule 12(b)(6), the Court must view the well-pleaded factual allegations in a claim in the light most favorable to the non-moving party. *Dusek v. JPMorgan Chase & Co.*, 832 F.3d 1243, 1246 (11th Cir. 2016). Viewed in that manner, the factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the claim are true (even if doubtful in fact). *Twombly*, 550 U.S. at 555 (citations omitted). The Supreme Court has emphasized that "[t]o survive a motion to dismiss a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* at 570.

When evaluating a motion to dismiss under Rule 12(b)(6):

> [A] court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Iqbal,* 556 U.S. at 679. Factually unsupported allegations based "on information and belief" are not entitled to the assumption of truth. *See Scott v. Experian Info. Sols., Inc.*, No. 18-CV-60178, 2018 WL 3360754, at *6 (S.D. Fla. June 29, 2018) (J. Altonaga) ("Conclusory allegations made upon information and belief are not entitled to a presumption of truth, and allegations stated upon information and belief that do not contain any factual support fail to meet the *Twombly* standard.").

## DISCUSSION

### I.  **SHOTGUN PLEADING**

To satisfy the Rule 8 pleading requirements, a complaint must provide the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests. *See Swierkiewicz*, 534 U.S. at 512. "The defining defect in shotgun pleadings is . . . the net effect that it is 'virtually impossible to know which allegations of fact are intended to support which claim(s) for relief.' " *Craighead v. Austal USA, LLC*, No. 17-0445-WS-MU, 2017 WL 6559917, at *2 (S.D. Ala. Dec. 21, 2017) (quoting *Anderson v. Dist. Bd. of Trustees of Cent. Florida Cmty. Coll.*, 77 F.3d 364, 366 (11th Cir. 1996)); *see also Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1322–23 (11th Cir. 2015) ("The unifying characteristic of all types of shotgun pleadings is that they fail

6

to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests.").

The FAC is a shotgun pleading because each Count incorporates all of the predecessor counts. See, e.g., ECF No. 14 ¶¶ 49, 55. *Weiland*, 792 F.3d at 1321. ("The most common type [of improper shotgun pleadings]—by a long shot—is a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint.*"); see also Jackson v. Bank of Am., N.A.*, 898 F.3d 1348, 1356 (11th Cir. 2018) (dismissing as shotgun pleading complaint that incorporated 123 factual allegations into every count). For that reason alone, I recommend that the Motion to Dismiss be GRANTED and Counts II and III be DISMISSED without prejudice.

## II.   **COUNT II**

### A. *Qualified Immunity*

The Supreme Court has stressed that qualified immunity represents an immunity from suit rather than a defense to liability, and that it should therefore be addressed in the earliest possible stage of a case. *Hunter v. Bryant*, 502 U.S. 224, 227 (1991). Qualified immunity offers "complete protection for government officials sued in their individual capacities if their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' " *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

Qualified immunity is a "muscular doctrine that impacts on the reality of the workaday world as long as judges remember that the central idea is this pragmatic one: officials can act without fear of harassing litigation only when they can reasonably anticipate—before they act or do not act—if their conduct will give rise to damage liability for them." *Maddox v. Stephens*, 727 F.3d 1109, 1120 (11th Cir. 2013) (citing *Davis v. Scherer*, 468 U.S. 183, 195 (1984)). "If objective observers cannot predict—at the time the official acts—whether the act was lawful or not, and the answer must await full adjudication in a district court years in the future, the official deserves immunity from liability for civil damages." *Id.* (citing *Elder v. Holloway*, 510 U.S. 510, 513–15 (1994)).

"In order to receive qualified immunity, the public official must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." *Lee*, 284 F.3d at 1194 (internal quotation marks omitted) (*quoting Courson v. McMillian*, 939 F.2d 1479, 1487 (11th Cir. 1991)). "Once the defendant establishes that he was acting within his discretionary authority, the burden shifts to the plaintiff to show that qualified immunity is not appropriate." *Id.*[1] In addressing a motion to dismiss on qualified immunity, the Court may begin by addressing either the existence of a constitutional violation or the question of whether the right being violated has been "clearly established." *Pearson v. Callahan*, 555 U.S. 223, 235 (2009). Qualified immunity applies to damages claims only. *Id.* at 242–43.

---

[1] Mr. Grenon does not contest that the Deputy Rothman was acting within the scope of his discretionary authority.

8

A right may be clearly established for qualified immunity purposes in one of three ways: "(1) case law with indistinguishable facts clearly establishing the constitutional right; (2) a broad statement of principle within the Constitution, statute, or case law that clearly establishes a constitutional right; or (3) conduct so egregious that a constitutional right was clearly violated, even in the total absence of case law." *Lewis*, 561 F.3d at 1291–92 (internal citations omitted).

Regarding the first category, "the clearly established right must be defined with specificity . . . ." *City of Escondido v. Emmons*, 139 S. Ct. 500, 503 (2019). "[O]nly Supreme Court cases, Eleventh Circuit caselaw, and [state] Supreme Court caselaw can 'clearly establish' law in this circuit." *Thomas ex rel. Thomas v. Roberts*, 323 F.3d 950, 955 (11th Cir. 2003) (citation omitted).

The third category is "narrow" and "encompasses those situations where 'the official's conduct lies so obviously at the very core of what the [relevant constitutional provision] prohibits that the unlawfulness of the conduct was readily apparent to the official, notwithstanding the lack of case law.'" *Loftus v. Clark–Moore*, 690 F.3d 1200, 1205 (11th Cir. 2012) (quoting *Terrell v. Smith*, 668 F.3d 1244, 1257 (11th Cir. 2012)). *See also Maddox*, 727 F.3d at 1121. "The inquiry whether a federal right is clearly established 'must be undertaken in light of the specific context of the case, not as a broad general proposition.'" *Id*. at 1204 (quoting *Coffin v. Brandau*, 642 F.3d 999, 1013 (11th Cir. 2011) (en banc)).

The constitutional violation Mr. Grenon raises here is a failure to intervene to stop a false arrest being made without probable cause, not the false arrest itself. The

failure of a present but non-arresting officer, who is unaware of a lack of arguable probable cause for the arrest, to intervene in a false arrest being made by another officer is not a constitutional violation that is "clearly established" by caselaw in this circuit, nor do the facts presented in the FAC describe conduct so egregious that it is clear a constitutional right was violated. *Id.*; *Thomas ex rel. Thomas v. Roberts*, 323 F.3d 950, 955 (11th Cir. 2003).

Mr. Grenon cites three cases to support his argument that the law was clearly established at the time of the alleged violation (May 31, 2019). First, he cites *Wilkerson v. Seymour*, 736 F.3d 974 (11th Cir. 2013). *Wilkerson* does not constitute "case law with indistinguishable facts clearly establishing the constitutional right." *Lewis*, 561 F.3d at 1291–92. In *Wilkerson*, the Eleventh Circuit states the following regarding present but non-arresting officers:

> In *Jones v. Cannon*, we held that where an officer was present during an arrest and knew that the arresting officer had no reasonable basis for arguable probable cause, the non-arresting officer could be liable under § 1983 if he was sufficiently involved in the arrest. 174 F.3d 1271, 1283–84 (11th Cir.1999). We then found that the non-arresting officer could have been sufficiently involved as a participant where he participated in an interview resulting in an allegedly fabricated confession, took notes from which the police report was prepared, and transported the detainee to the jail. *Id.* at 1284. . . . [A] non-arresting officer does not have a duty to investigate the basis of another officer's arrest. *See id.*, 174 F.3d at 1284–86.

*Wilkerson*, 736 F.3d at 979–80. There, the Court held that the sergeant who arrived on the scene after the plaintiff had been placed under arrest to investigate a complaint made against the arresting officer, was entitled to qualified immunity because he lacked the requisite information to put him on

notice that an unlawful arrest was occurring or had occurred. *Id*. at 980. The Court went on to state that the sergeant was "permitted to rely upon the account of [the arresting officer], which did not raise any obvious concerns as to the existence of probable cause. . . There is no constitutional requirement for a supervising officer to complete a full on-scene investigation of the basis for an arrest for conduct he did not observe." *Id*.

Here, the FAC does not raise sufficient facts entitled to the assumption of truth to establish (1) that Deputy Rothman knew that Deputy Perez had no reasonable basis for arguable probable cause, and (2) that Deputy Rothman was sufficiently involved in the arrest. *Jones*, 174 F.3d at 1283–84. The FAC states as follows regarding Deputy Rothman's involvement:

> 28. On information and belief, Defendant ROTHMAN and two of the unidentified JOHN DOE Defendants arrived on the scene and were present during the encounter with GRENON prior to and after his arrest. On information and belief, Defendant PEREZ apprised Defendant ROTHMAN and the unidentified JOHN DOE Defendants of the circumstances of the arrest and they were made aware that neither Defendant PEREZ nor any witness observed GRENON commit any crime, and that there was lack of probable cause to suspect GRENON of any criminal activity. Despite having knowledge of the lack of probable cause for arrest, at no point did Defendant ROTHMAN, or any of the two unidentified JOHN DOE deputies attempt to intervene and/or stop the detention and arrest of GRENON, but rather actively participated in his arrest.

> 29. On information and belief, Defendant ROTHMAN and/or the unidentified JOHN DOE Defendants ran a check on GRENON's Florida DL and CCW permit and determined that both were valid, as well as confirm that GRENON had no criminal history and/or active warrants.

> 31. Defendant PEREZ thereafter took out his personal cell phone to take photos of GRENON. Defendant PEREZ stated that he was going to send GRENON's photos to all surrounding agencies presumably to embarrass or further intimidate GRENON. Defendant PEREZ, Defendant ROTHMAN and two unidentified male PBSO deputies [JOHN DOEs] were at all times present at the scene, observed Defendant PEREZ's actions, and began laughing after hearing Defendant PEREZ's threat.

ECF No. 14 ¶¶ 28–29, 31. The facts in paragraphs 28 and 29 are presented "upon information and belief" without any factual support and are thus not entitled to the assumption of truth. *Scott*, 2018 WL 3360754, at *6 ("Conclusory allegations made upon information and belief are not entitled to a presumption of truth, and allegations stated upon information and belief that do not contain any factual support fail to meet the *Twombly* standard."). The only paragraph that is entitled to the assumption of truth is paragraph 31. I do not find that paragraph alone is sufficient to properly plead that Deputy Rothman (1) knew that Deputy Perez had no reasonable basis for arguable probable cause, and (2) that Deputy Rothman was sufficiently involved in the arrest. *Jones*, 174 F.3d at 1283–84. This finding is especially apt when considering that Deputy Rothman, as the non-arresting officer, did not have a duty to investigate the basis of Deputy Perez's arrest when he arrived on scene. *See id.* at 1284–86.

*Wilkerson* clearly establishes the constitutional right to be free from unlawful arrest and further establishes the right to hold a present but non-arresting officer liable for civil rights claims when that officer has knowledge of the lack of arguable probable cause for the arrest and is sufficiently involved in the arrest. The FAC does

not properly plead that to be the case for Deputy Rothman. The facts of *Wilkerson* are not so indistinguishable so as to clearly establish the constitutional right. Put differently, Deputy Rothman could not have reasonably anticipated that by failing to intervene in Mr. Grenon's arrest, his conduct would give rise to damage liability. *Maddox v. Stephens*, 727 F.3d 1109, 1120 (11th Cir. 2013).

Mr. Grenon cites two other cases to support his argument that Deputy Rothman had fair warning that his particular conduct violated Mr. Grenon's constitutional rights: *Allen v. Pacheco*, No. 8:20-cv-1846-T-33JSS, 2020 WL 7318954, at \*4 (M.D. Fla. Dec. 11, 2020) and *Stallworth v. Hurst*, No. 2:18-cv-1005-ALB-SRW, 2019 WL 5070196, at \*3 (M.D. Ala. Oct. 8, 2019). Neither of these cases can "clearly establish" law in this circuit because they are not from the Supreme Court, Eleventh Circuit, or Florida Supreme Court. *Thomas*, 323 F.3d at 955. And, even if they were, they were decided *after* the May 31, 2019 arrest. Thus, Deputy Rothman could not have been aware of the allegedly "clearly established" law at the time of his inaction. Finally, the well-plead facts of both of those cases are largely indistinguishable from *Wilkerson*, which was heavily cited in both cases, so as to clearly put the non-arresting officers in *those* cases on notice that their failure to intervene in an unlawful arrest was in violation of the constitution. As explained, that is not the case here.

Mr. Grenon has also failed to articulate how Deputy Rothman's conduct was so egregious that a constitutional right was clearly violated. *Lewis*, 561 F.3d at 1291–92. "This is not a case that so obviously violates the Fourth Amendment that prior case law is unnecessary to hold [Deputy Rothman] individually liable for [his]

conduct. To find otherwise would require [this Court] to conclude that [no reasonable officer would have failed to intervene in the arrest]." *Corbitt v. Vickers*, 929 F.3d 1304, 1321 (11th Cir. 2019). I do not find that to be a reasonable conclusion given the limited well-plead facts presented in the FAC regarding Deputy Rothman's involvement in the incident. Accordingly, I find that Deputy Rothman is entitled to qualified immunity on Count II. I recommend that the Motion to Dismiss be GRANTED in that respect and Count II be DISMISSED without prejudice.

III.   **<u>COUNT III</u>**

Count III is a State law claim for false arrest against PBSO. ECF No. 14 at 12. Mr. Grenon alleges that because PBSO is responsible for the conduct of its deputies acting in the course and scope of their employment, PBSO is vicariously liable for Deputy Perez's false arrest. *Id*. Mr. Grenon refers to Fla. Stat. 768.28(9)(a) and acknowledges that

> PBSO is not 'liable in tort for the acts or omissions of an officer, employee, or agent committed while acting outside the course and scope of her or his employment or *committed in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property*.

*Id*. ¶ 61 (quoting Fla. Stat. 768.28(9)(a))(emphasis added). In the following paragraph, Mr. Grenon states that

> [a]s permitted by Fed. R. Civ. P. 8(d), in the alternative to the contrary allegations set forth in this Complaint, GRENON alleges that Defendant PBSO committed the tort of false arrest, *but not in bad faith or with malicious purpose, nor in a manner exhibiting willful and wanton disregard of human rights, safety, or property*.

*Id*. ¶ 62 (emphasis added). PBSO argues that Mr. Grenon has not properly pled

14

that PBSO is not immune from suit because of the inconsistencies within the FAC itself. Most notably, PBSO points to paragraph 47 of the FAC, which corresponds to Count I brought against Deputy Perez for violation of 42 U.S.C. § 1983 by making a false arrest. Paragraph 47 is incorporated into Count III. *See* ECF No. 14 ¶ 55. Paragraph 47 of the FAC states as follows

> Defendant PEREZ committed these unlawful acts under color of state law *in bad faith and with malicious purpose in reckless, deliberate, and willful disregard* of GRENON's civil rights as secured by the Fourth Amendment resulting in direct and proximate injuries to GRENON that would not have occurred but for Defendant PEREZ's conduct, and that these injuries were a reasonably foreseeable consequence of Defendant PEREZ's conduct.

ECF No. 14 ¶ 47. Since this paragraph is incorporated into Count III and is in direct contradiction to paragraph 62, I find that the FAC, as written, is unclear and not in compliance with Fed. R. Civ. P. 8. Mr. Grenon is correct that he "may state as many separate claims or defenses as it has, regardless of consistency." Fed. R. Civ. P. 8(d)(3). But, in raising two inconsistent claims where one is incorporated by reference in the other is contrary to the pleading requirements of Rule 8, which requires that a claim provide the defendant fair notice of plaintiff's claims and the grounds upon which they rest. *See Swierkiewicz*, 534 U. S. at 512. As written, the FAC does not provide PBSO with clear or fair notice of Mr. Grennon's claims and the defenses on which PBSO may or may not be able to rely. Accordingly, I find that Mr. Grenon has not properly plead that the false arrest state law claim against PBSO is made in the alternative. I recommend that the Motion to Dismiss be GRANTED in that respect and Count III be DISMISSED without prejudice.

IV.   **<u>LEAVE TO AMEND</u>**

The Court must next consider whether to grant Mr. Grennon leave to amend Counts II and III of the FAC.  Federal Rule of Civil Procedure 15 states that the "court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). In general, a plaintiff must be given at least one opportunity to amend a complaint. *Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th Cir. 2001). "After a plaintiff's first opportunity to amend, leave for additional amendments may be denied because of 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failures to cure deficiencies by amendments previous allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, or futility of amendment.'" *In Re Zantac (Ranitidine) Prods. Liab. Litig.*, No. 20-MD-2924-RLR, 2021 WL 2865869, at * 23 (S.D. Fla. July 8, 2021) (J. Rosenberg) (citing *Andrx Pharms., Inc. v. Elan Corp., PLC*, 421 F.3d 1227, 1236 (11th Cir. 2005)). Denial of leave to amend is justified by futility when the complaint as amended would still be subject to dismissal. *See, e. g., Christman v. Walsh*, 416 Fed. App'x 841, 844 (11th Cir. 2011) ("A district court may deny leave to amend a complaint if it concludes that the proposed amendment would be futile, meaning the amended complaint would not survive a motion to dismiss.").

Mr. Grenon should be granted leave to file a Second Amended Complaint. On the current record, I cannot conclude that permitting a Second Amended Complaint would be futile, nor has there been a showing of undue delay, bad faith, or repeated failure to cure errors. Also, Deputy Rothman and PBSO have not articulated undue prejudice from allowing an amended pleading. Therefore, I recommend that Counts

16

II and III be DISMISSED WITHOUT PREJUDICE, and Mr. Grenon be granted one final opportunity to amend his complaint.

Although the Court recommends that Mr. Grenon be given one more opportunity to amend his pleading, Plaintiff is cautioned not to repeat past errors. *Jackson v. Bank of Am., N.A.*, 898 F.3d 1348, 1357 (11th Cir. 2018) ("Implicit in [permitting] a repleading . . . is the 'notion that if the plaintiff fails to comply with the court's order—by filing a repleader with the same deficiency—the court should strike his pleading or, depending on the circumstances, dismiss his case and consider the imposition of monetary sanctions.'") (quoting *Byrne v. Nezhat*, 261 F.3d 1075, 1133 (11th Cir. 2001), abrogated on other grounds by *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639 (2008)).

## RECOMMENDATION

For the foregoing reasons, I **RECOMMEND** that Defendants' Motion to Dismiss (ECF No. 23) be **GRANTED.** Counts II and III should be **DISMISSED WITHOUT PREJUDICE** with leave given to Mr. Grenon to file a Second Amended Complaint.

## NOTICE OF RIGHT TO OBJECT

A party shall serve and file written objections, if any, to this Report and Recommendation with the Honorable Aileen M. Cannon, United States District Judge for the Southern District of Florida, within **FOURTEEN (14) DAYS** of being served with a copy of this Report and Recommendation. Failure to timely file objections shall constitute a waiver of a party's "right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." 11th Cir.

R. 3-1 (2016).

**If counsel do not intend to file objections, they shall file a notice advising the District Court within FIVE DAYS of this Report and Recommendation.**

**DONE and ORDERED** in Chambers at West Palm Beach, Palm Beach County, in the Southern District of Florida, this 24th day of January 2022.

_____
BRUCE E. REINHART
UNITED STATES MAGISTRATE JUDGE